UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CARLO CAROLLO, JR. and
FRANK CAROLLO, INDIVIDUALLY
AND ON BEHALF OF THE ESTATE
OF CARLO CAROLLO, JR. AND THE
ESTATE OF ANGELINA CAROLLO

CIVIL ACTION NO.:  18-13330

SECTION:  "D"(4)

VERSUS

JURY DEMAND

ACE AMERICAN INSURANCE
COMPANY, LANGER TRANSPORT
CORPORATION, XYZ INSURANCE
COMPANY, and KEVIN OWENS

---

### DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND SUPPLEMENTAL AND AMENDED COMPLAINT

**NOW INTO COURT**, through undersigned, come Defendants, Kevin Owens ("Owens"), Langer Transport Corporation ("Langer"), and ACE American Insurance Company (now known as "Chubb" and hereinafter referred to as "Chubb"), (hereinafter sometimes collectively referred to as "Defendants"), who hereby submit their opposition to Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint.[1]  For the reasons set forth herein, Defendants request that this Court deny Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

**I.     CASE BACKGROUND**

The out-of-time effort by Plaintiffs' counsel to amend to bring into this case as a party-defendant the Louisiana Department of Transportation is a thin attempt to destroy the diversity jurisdiction of this Court and to prejudice Defendants.   A complete understanding of the

---

[1] Rec. Doc. 61.

procedural history therefore is necessary to examine their belated request.

This suit arises out of an auto accident occurring on November 9, 2017 caused by Carlo Carollo, Sr., the Plaintiffs' deceased father, when Mr. Carollo, Sr., failed to obey a stop sign and pulled directly in front of the semi-rig driven by Owens on a favored State Highway (LA. 46).[2] According to the police report generated as a result of the subject accident, and the recent sworn testimony of the investigating State Trooper, Carlo Carollo, Sr., was at fault in causing the subject accident.

## II.    RELEVANT CASE HISTORY

### A.    The State Police Investigation Showed No Road Defects

The State Police's accident report ("The Police Report") was completed on February 1, 2018.[3]   The police report states that the roadway conditions had "no abnormalities."[4]   It states that Mr. Carollo had "no [vision] obscurements."[5]  It states that Defendant had "no [vision] obscurements."[6]   It states that the traffic controls were functioning.[7]   The Police Report states that "LA 46 is a two lane, slightly curved, roadway."[8]   It also states that "[o]n LA 46 at Murphey Rd., approximately 500 feet east of the crash scene, there were two "45 MPH" signs posted on either side of LA 46 facing opposite directions."[9]   It states that the primary factors causing the accident were "violations."[10]   The report states that neither Carlo Carollo, Sr., nor his passenger, Angeline Carollo had their seatbelts on.[11]   Per the police report Carlo Carollo, Sr., was cited for

---

[2] See Subject Accident Police Report attached hereto as Exhibit "A."
[3] See Exhibit "A."
[4] *Id*.
[5] *Id*. at page 3.
[6] *Id*.
[7] *Id*.
[8] *Id*. at page 9.
[9] *Id*.
[10] *Id*. at page 3.
[11] *Id*.

violating La 32:123, specifically for disregarding a stop sign.[12]   The police report states that "[Carlo Carollo, Sr.] was at fault for this crash for failing to stop at a stop sign per LRS 32:123 and failure to wear safety restrains per LRS 32:295.1."[13]   The police report does not indicate that any roadway conditions were contributing factors.

### B. **Plaintiffs Should Nott be Allowed to Perpetuate this Artifice**

Plaintiffs were represented by counsel as early as June 2018.[14]

On August 16, 2018, **_pre-suit_**, counsel for Defendants' provided Plaintiffs with a copy of Defendants' accident reconstruction report.[15]   Included in said report are, among other things, photos, diagrams, speed limits, road curvature, and sight lines, all related to the subject accident.[16]   Defendants maintain that this comprehensive analysis of the physical scene of the accident and the vehicles involved in the accident, clearly shows that Plaintiffs knew or should have known (at least by August 16, 2018) whether there was a valid claim to be made against the Department of Transportation ("DOTD") – there simply is none!.

On November 7, 2018, Plaintiffs filed their original petition for damages in the Thirty-Fourth Judicial District Court for the Parish of St. Bernard, State of Louisiana.[17]   At no point, did Plaintiffs mention the DOTD in their initial Petition.[18]

---

[12] _Id._

[13] _Id._

[14] Plaintiffs were represented by counsel as early as June of 2018 as Defendants received a letter of representation from counsel of record on June 12, 2018.

[15] See Rec. Doc. 39-1.

[16] _Id._

[17] See Plaintiffs' original Petition (Rec. Doc. 1-1).  Plaintiffs waited a full year to file their state-court action, filing it over ten months ago, on November 7, 2018.  Plaintiffs were represented by counsel as early as June of 2018. Plaintiffs knew they were going to sue immediately however, Plaintiffs decided to wait a full year to sue in a death case.  There is no just reason to wait until the eve of the prescriptive period to file suit in a death case, because it is unlike an injury case where treatment needs to run its course before damaged can be determined.

[18] Rec. Doc. 1-1.

On December 11, 2018, Defendants removed this case to the United States District Court for the Eastern District of Louisiana.[19]  This case has been pending in this Court for almost nine (9) months.

On January 31, 2019, the Court held a Scheduling Conference in which Plaintiffs' attorneys Roberta Burns and Beau Camel participated.[20]  That same day, on January 31, 2019, the Court issued a Scheduling Order.[21]  The Scheduling Order set **_March 4, 2019_**, as the deadline for amendments to pleadings.[22]  The discovery deadline is September 19, 2019 and trial is set for November 18, 2019.[23]

On March 4, 2019, Plaintiffs' filed their First Supplemental and Amended Complaint alleging independent acts of negligence by Langer.[24]  Again, Plaintiffs never voiced a scintilla of fault against the DOTD.[25]  On April 4, 2019, Defendant, Langer, filed a Motion for Partial Summary Judgment seeking to dismiss any claims of independent negligence against Langer as Langer has already admitted it is vicariously liable for the actions of Owens.[26]

On May 3, 2019, two months after the pleading amendment deadline, Plaintiffs made their first deposition request.[27]  Plaintiffs waited until June 19, 2019 to request a date to depose an eyewitness; and, waited until June 25, 2019 to ask for dates to depose first responders.[28]

---

[19] Rec. Doc. 1.
[20] See Rec. Doc. 11.
[21] _Id._
[22] _Id._
[23] _Id._
[24] See Rec. Doc. 15.
[25] _Id._
[26] Rec. Doc. 18.  A second reply memo in support was filed by Langer on May 14, 2019 (Rec. Doc. 28).
[27] Rec. Doc. 37-1.  Plaintiffs waited a whole year-and-a-half before asking for a single deposition date in this case.
[28] Rec. Doc. 37-2 and Rec. Doc. 37-3.  Plaintiffs waited nineteen (19) months before asking to depose the eyewitness and first responders to the accident.

Plaintiffs set Owens' deposition for June 27, 2019.  A day or two before the deposition of Owens was to take place, Plaintiffs rescheduled for August 29, 2019.[29]

On June 28, 2019, Plaintiffs' filed a Motion to Compel Discovery.[30]  Defendants filed an opposition on July 7, 2019.[31]  On July 24, 2019, oral argument on Plaintiffs' Motion to Compel came before Magistrate Judge Roby in which three (3) of Plaintiffs' lawyers, Roberta Burns, Beau Camel, and Joshua L. Rubenstein[32] appeared on behalf of Plaintiffs.

On July 1, 2019, Plaintiffs filed a Motion for Continuance of Trial and All Associated Scheduling Deadlines.[33]  Defendants filed an opposition on July 8, 2019.[34]

On July 17, 2019, this Court set a Settlement Conference for September 26, 2019.[35]

On July 25, 2019, Plaintiffs filed a Motion to Enroll Co-Counsel, seeking to enroll Joshua L. Rubenstein and L. Blake Jones as additional counsel for Plaintiffs in this matter.[36]  Plaintiffs' Motion to Enroll Co-Counsel was granted by this Court on July 30, 2019.[37]

On July 25, 2019, Plaintiffs filed the subject Motion for Leave to File Second Supplemental and Amended Complaint (hereinafter referred to as "Second Motion to Amend").[38]  Plaintiffs did not seek consent from Defendants which is in direct violation of the Court's Scheduling Order.[39]  Plaintiffs' Motion for Leave also violates this Court's Scheduling Order as

---

[29] Owens took off time for the first deposition only to have Plaintiffs reschedule.  Owens will have to continue taking off more time to accommodate Plaintiffs.  This is significant because continuances in this matter have many prejudicial effects on Defendants, this being just one of the many.

[30] Rec. Doc. 30.

[31] Rec. Doc. 39.

[32] Mr. Rubenstein participated in oral argument on Plaintiffs' Motion to Compel (even speaking) on behalf of Plaintiffs before this Court prior to his enrollment.  Plaintiffs had not even filed their motion to have Mr. Rubenstein enrolled until July 25, 2019 (Rec. Doc. 60) and Mr. Rubenstein was not even enrolled until July 30, 2019 (Rec. Doc. 64).

[33] Rec. Doc. 34.

[34] Rec. Doc. 37.

[35] Rec. Doc. 57.

[36] Rec. Doc. 60.

[37] Rec. Doc. 64.

[38] Rec. Doc. 61.

[39] Rec. Doc. 11.

it comes five (5) months past this Court's deadline for filing supplemental and amending pleadings.[40]

## SUMMARY OF ARGUMENT

Plaintiffs have had *ample* time to raise a claim against the DOTD even the fictitious claim they now attempt to posit.  It has been nearly twenty-two (22) months since the subject accident occurred.[41]  It has been nearly one (1) year since Defendants gave Plaintiffs a copy of Defendants' accident reconstruction report which included information (photos, diagrams, speed limits, road curvature, and sight lines) that would put Plaintiffs on notice of any potential claim with regard to the conditions of the scene where the subject accident occurred.  Plaintiffs filed their initial petition over nine (9) months ago.  Plaintiffs filed their First Supplemental and Amended Complaint over five (5) months ago.[42]  Neither the original nor first supplemental complaints ever once mentioned any defect(s) in the roadway much less claims against the DOTD.[43]  Plaintiffs admitted in their depositions that they and the decedents had been familiar with the accident's intersection and general locale.[44]  They (and their parents) had lived on the street in question (Volpe Drive) for decades, and plaintiff Frank Carollo still resides on Volpe Drive.  Plaintiffs were aware of the March 4, 2019 deadline.[45]  Plaintiffs' never complained about this deadline.  Plaintiffs' brought the instant Second Motion to Amend five (5) months after the Court's deadline and without good cause.

Defendants submit that that there are two (2) independent and compelling grounds for denying Plaintiffs' Second Motion to Amend.  First, Plaintiffs' Second Motion violates this

---

[40] Rec. Doc. 11 and Rec. Doc. 61.
[41] See Exhibit "A."
[42] Rec. Doc. 15.
[43] Rec. Doc. 1-1 and Rec. Doc. 15.
[44] See fn. 104-108.
[45] Rec. Doc. 11.

Court's Scheduling Order in by being over five (5) months past the cut-off.  Second, Plaintiffs' Second Motion does not meet the *Hensgens* standards and should be denied pursuant to the Court's discretionary power afforded under 28 U.S.C. §1447(e).

## LAW AND ARGUMENT
### I.    PLAINTIFFS' SECOND MOTION TO AMEND SHOULD BE DENIED PER 16(B)

The Court's deadline for filing amended pleadings expired on March 4, 2019, over five (5) months before Plaintiffs filed their untimely Second Motion to Amend.  Plaintiffs are required, per Rule 16(b) of the Federal Rules of Civil Procedure, to prove that ***good cause*** exists to support the granting of their untimely Second Motion to Amend.  Plaintiffs have not only failed to prove good cause per 16(b), in fact, Plaintiffs do not even mount an attempt to show good cause. Plaintiffs never once mention Rule 16(b) in their entire motion and memorandum in support.

### A.   Plaintiffs' Second Motion to Amend Violates this Court's Scheduling Order Both in Terms of Timing and Manner

A Scheduling Conference was held on January 31, 2019.[46]  Plaintiffs' lawyers, Beau Camel and Roberta Burns participated on behalf of Plaintiffs.[47]  Neither Mr. Camel nor Ms. Burns mentioned any difficulty with adhering to the deadlines they agreed to.  The Court issued a Scheduling Order that same day which set the deadline for amending pleadings to be filed no later than March 4, 2019.[48]  Specifically, the Court's Order states:

> ***Amendments to pleadings***, ***third-party actions, cross claims, and counterclaims shall be filed no later than March 4, 2019***, ***in accordance with the Federal Rules of Civil Procedure and Local Rule 7.6.***[49]

Plaintiffs' instant Second Motion to Amend was filed on July 25, 2019, over five (5) months after the cut-off date.

---

[46] Rec. Doc. 11.
[47] *Id*.
[48] *Id*.
[49] *Id*.  (*emphasis added*).

Furthermore, the Court specifically addressed the fixed nature of its deadlines in its Scheduling Order, specifically stating:

> **Deadlines**, **cut-off dates**, **or other limits fixed herein may only be extended by the Court upon <u>timely</u> motion filed in compliance with Local Rules** and **upon a showing of good cause. Continuances will not normally be granted**. **The Court requires strict adherence to scheduling orders and deadlines**.[50]

Plaintiffs cannot not legitimately claim ignorance of the Court's deadline for amending pleadings since Plaintiffs filed their First Supplemental and Amended Complaint on March 4, 2019.[51]  Yet, Plaintiffs seek to file their Second Motion to Amend without complying with Local Rule 7.6:

> **Before filing any motion for leave to** intervene, **amend pleadings** or file a third-party complaint, **the moving party must attempt to obtain consent for the filing and granting of the motion from all parties having an interest to oppose**. If consent is obtained, the motion need not be assigned a submission date, but must be accompanied by a proposed order and include a certification by counsel for the moving party of the consent of opposing counsel.[52]

Clearly, Plaintiffs' Second Motion gives short shift to this Court's Order and Local Rule 7.6.

### B. <u>Plaintiffs Second Motion to Amend should not be granted per Federal Rule of Civil Procedure Rule 16(b)</u>

The decision to grant or deny leave to amend a complaint lies within the discretion of the Court.[53]  Federal Rule of Civil Procedure Rule 15(a) governs the amendment of a pleading prior to trial.[54]  Rule 15(a) provides that leave to amend is to be freely given *only when justice so requires*.[55]  However, the Fifth Circuit has clarified that when, as is the case here, a scheduling order has been issued by the Court and the proposed amendment is brought after the Court's

---

[50] Rec. Doc. 11. Pg. 5. (*emphasis added*).
[51] Rec. Doc. 15.
[52] LR 7.6.
[53] *Le Gardeur v. Life's Abundance, Inc.*, No. CV 18-6479, 2019 WL 2641212, at *9 (E.D. La. June 27, 2019) (citing *Little v. Liquid Air Corp.*, 952 F.2d 841, 845 (5th Cir. 1992)).
[54] Fed. R. Civ. P. 15(a).
[55] *Id.* (*emphasis added*).

deadline for doing so, Federal Rule of Civil Procedure Rule 16(b) governs.[56]

Rule 16(b) provides that once a scheduling order has been entered, it "***may be modified only for good cause and with the judge's consent.***"[57]   Here, Plaintiffs choose to ignore Rule 16(b) since there is a complete lack of any legal support for their position.

### C.   Plaintiffs Have No Good Cause Per Fed. R. Civ. P. 16(b)

There is no good cause supporting Plaintiffs untimely Second Motion to Amend.   In determining whether or not there is good cause to permit the amending of a pleading once the deadline for doing so has expired, courts consider the four (4) following factors:

> *(1) The explanation for the failure to timely move for leave to amend;*
> *(2) The importance of the amendment;*
> *(3) Potential prejudice in allowing the amendment; and,*
> *(4) The availability of a continuance to cure such prejudice.*[58]

Plaintiffs do not address any of these four (4) factors.   An analysis of these four (4) predicate factors clearly shows the absence of good cause sufficient to grant Plaintiffs' motion.

### a.   *Plaintiffs have not provided a valid explanation for their failure to timely move for leave to file their Second Motion to Amend*

Per Rule 16(b)(1), Plaintiffs are required to provide an explanation for their failure to

---

[56] *S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA*, 315 F.3d 533, 536 (5th Cir. 2003) ("[w]e take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired. Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave."); *Le Gardeur v. Life's Abundance, Inc.*, No. CV 18-6479, 2019 WL 2641212, at *9 (E.D. La. June 27, 2019) (citing *Fahim v. Marriott Hotel Services, Inc.*, 551 F.3d 344, 348 (5th Cir. 2008) ("[w]e previously held that Federal Rule of Civil Procedure 16(b) governs amendment of pleadings after a scheduling order's deadline to amend has expired.")); *Cole v. Sandel Med. Indus., L.L.C.*, 413 F. App'x 683, 688 (5th Cir. 2011); *Royal Ins. Co. of America v. Schubert Marine Sales*, 02–0916, 2003 WL 21664701, at *2 (E.D. La. July 11, 2003); *Galliano Marine Serv., LLC v. Schumacher*, No. CV 17-09868, 2018 WL 5631409, at *2 (E.D. La. Oct. 31, 2018), aff'd, No. CV 17-9868, 2019 WL 142281 (E.D. La. Jan. 9, 2019). Plaintiffs mistakenly rely upon *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), a case addressing Federal Rule of Civil Procedure Rule15(a), however, since the deadline to amend a pleading per the Court's Scheduling Order has expired, Rule 16(b) is to apply. See also, *Sapp v. Mem'l Hermann Healthcare Sys.*, 406 F. App'x 866, 869 (5th Cir. 2010).

[57] Fed. R. Civ. P. 16(b). (*emphasis added*).

[58] *Sw. Bell Tel. Co.*, 346 F.3d at 546 (quoting S&W Enters., 315 F.3d at 536); *Le Gardeur v. Life's Abundance, Inc.*, No. CV 18-6479, 2019 WL 2641212, at *9 (E.D. La. June 27, 2019). See also Fed. R. Civ. P. Rules 15(a), 16, 28.

timely move.[59]   Although never specifically addressing Rule 16(b), Plaintiffs provide two (2) explanations for being dilatory: first, Ms. Burns, one (1) of Plaintiffs' four (4) lawyers suffered a hip injury that "seriously hampered" all of Plaintiffs' attorneys ability to handle this case; and, second, that Plaintiffs only recently discovered that the DOTD *may* bear some liability for causing the subject accident.   When the record in this case is examined, however, neither excuse constitutes good cause.

>    **i.    *Plaintiffs' Counsel's excuse is without merit since Plaintiffs have four (4) lawyers***

Ms. Burns suffered a hip injury in January of 2019.   Yet, she never raised and/or mentioned this hip injury until doing so became opportune a few weeks ago (in July 2019), when Plaintiff's asked for a trial continuance – yet, this injury was never addressed with Defendants when consent was sought.[60]   Plaintiffs provide no explanation as to why this hip injury prevented Plaintiffs from properly handling and/or delegating the handling of this case.   Nor have Plaintiffs provided any reason whatsoever as to why Ms. Burns' injury prevented her co-counsel from adequately complying with the Court's orders.   Plaintiffs are represented by four (4) attorneys, two (2) of whom (Roberta Burns and Beau Camel) participated in the Court's Scheduling Conference on January 31, 2019.[61]   Note Ms. Burns's attendance at the Scheduling Conference was after her hip injury.   Plaintiffs filed their First Supplemental and Amended Complaint in compliance with the Court's deadlines, again, post hip injury.

In *Parkcrest*, this Court dealt with a similar situation.[62]   There, plaintiff's counsel

---

[59] Fed. R. Civ. P. 16(b)(1).
[60] Rec. Doc. 34. If Plaintiffs' counsel continues to raise a hip injury as a reason for their mishandling of this case, then Defendants will seek a physician's note explaining to us why medically, Ms. Burns' hip prevented her from representing her clients and/or delegating the same to other enrolled counsel of record.  Defendants should not suffer the consequences of Plaintiffs' counsels' mishandling of this case.
[61] Rec. Doc. 11.
[62] *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, No. CV 15-1533, 2017 WL 6559870, at *2 (E.D. La. Dec. 22, 2017).

attempted to prove good cause for their untimely conduct by attributing their failure to act to an "unexpected family emergency" experienced by only one (1) of plaintiff's multiple lawyers.[63] The court in *Parkcrest* stated, "[w]hile the Court sympathizes with counsel's family emergency, it does not explain why the five other attorneys listed as counsel of record for [plaintiff] could not have adequately and timely [complied with this court's order.]"  Likewise, while Defendants sympathize with Ms. Burns, this Court has not been provided with a cognizable explanation as to why any of the other experienced attorneys on this case could not have properly managed the case.

Second, Defendants are unconvinced that Plaintiffs have only "recently" determined that the DOTD *may* be liable.  Before suit was filed, Defendants provided Plaintiffs with a copy of Defendants' accident reconstruction report which included, among other things, photos, diagrams, speed limits, road curvature, and sight lines, all related to the subject accident.[64]  It is disingenuous for Plaintiffs to suggest that they only recently discovered what they knew or should have known for over a year.[65]  The real explanation is simply a desire for remand to the back-yard of the Torres Law firm

Again, *Parkcrest* applies.  In *Parkcrest*, plaintiffs provided no good cause sufficient to explain how they did not discover a "new" issue until after the expiration of the court's deadline.[66]  Similarly, here, Plaintiffs have provided no explanation as to how or why they are just now having their epiphany regarding the DOTD.  Note, in *Parkcrest*, plaintiffs were in

---

[63] *Id.*

[64] Rec. Doc. 39-1.

[65] See *Imbornone v. Tchefuncta Urgent Care, Inc.*, No. 11-3195, 2013 WL 3818331, at *5 (E.D. La. July 22, 2013) (finding that denying leave to amend complaint under Rule 16(b) when plaintiff failed to provide an explanation for his untimely motion and his proposed amendment would be futile); *In re Belle Chasse Marine Transp., Inc.*, No. 12-1281, 2013 WL 3422032, at *4 (E.D. La. July 8, 2013) (same); *Carmouche v. Nat'l Flood Ins. Program*, No. CV 17-11479, 2018 WL 5279121, at *5 (E.D. La. Oct. 24, 2018).

[66] *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, No. CV 15-1533, 2017 WL 6559870, at *3 (E.D. La. Dec. 22, 2017)

possession of emails and inspection reports prior to the courts deadline that discussed the issues that plaintiffs failed to bring up until after the deadline had expired.[67]  Additionally, in *Parkcrest*, the court found that plaintiffs failed to articulate with any specificity any new information in support of their motion for leave, as such, there was no good cause for their untimely amendment.[68]  Similarly, we are left with no valid explanation from Plaintiffs for their bringing their untimely Second Motion to Amend.

Simply, Plaintiffs have been in possession of information concerning the road conditions for over a year, and never once raised any issue related to such.  If Plaintiffs thought that there was a legitimate allegation to be made against the DOTD, they would have done so long ago.  Thus, the first factor per Rule 16(b) for establishing good cause to allow Plaintiffs' untimely Second Motion to Amend is not met.

> **b.  There is no good cause to file this untimely Second Motion to Amend as Plaintiffs have not provided a valid explanation for the importance of their proposed amendment**

Per Rule 16(b), Plaintiffs are also required to explain the importance of the amendment in order to show that there is good cause.[69]  Plaintiffs, however, fail to do so.  Plaintiffs only excuse is that the DOTD *may* be liable, but provide no specifics to support their *may* be assertion.  A "*may* be" is not good cause.

The real, unstated reason for their attempted artifice, is that Plaintiffs apparently find federal court repugnant.  From a temporal standpoint, Plaintiffs' Second Motion to Amend was instituted less than twenty-four (24) hours after their misadventure in support of their ill-advised Motion to Compel against Defendants.  Frankly, it is unlikely that Plaintiffs truly wish to pursue the DOTD.  They simply want out of the Eastern District.  This is not the good cause envisioned

---

[67] *Id.*
[68] *Id.*
[69] Fed. R. Civ. P. 16(b).

by Rule 16(b).

**c.  There is no good cause to grant Plaintiffs' untimely Second Motion to Amend given that only Defendants would be prejudiced whereas, if denied, Plaintiffs will not be prejudiced**

If Plaintiffs' Second Motion to Amend is granted, this case will be remanded back to state court.  Defendants, Langer, Owens, and Chubb have a right to remain in the federal forum.  Courts have long recognized a defendant's compelling interest in maintaining the federal forum.[70]  Diversity jurisdiction and the right of removal exist to give non-resident defendants the right to litigate in an unbiased forum.[71]  It has also long been recognized that an amendment and subsequent remand to state court would be prejudicial to the diverse defendant.[72]  Additionally, Plaintiffs' Second Motion to Amend would not only unduly prejudice Defendants, it would also unnecessarily delay trial which will mean unnecessary costs and delays.

It is clear that if allowed, Plaintiffs' untimely Second Motion to Amend would only be prejudicial to Defendants.  Thus, the third factor per Rule 16(b) for establishing good cause to allow Plaintiffs' untimely Second Motion to Amend is not met.

**d.  There is no good cause given that a continuance would not cure the undue prejudice that Defendants would suffer if Plaintiffs' untimely Second Motion to Amend were granted**

In evaluating whether or not there is good cause per Rule 16(b), courts consider whether a continuance could cure the prejudice that a defendant would unfairly endure should the untimely amendment be allowed.[73]  Plaintiffs fail to address this factor because, in light of the relevant facts and Defendants' Opposition to Trial Continuance[74], it is obvious that a continuance

---

[70] *Tomlinson*, 2006 U.S. Dist. LEXIS 29394 at *16; *Campagna v. Averitt Express, Inc.*, 1999 U.S. Dist. LEXIS 8981 (E.D. La. June 9, 1999) (finding that a diverse Defendant has a compelling interest in retaining the federal forum).
[71] *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).
[72] *Campagna*, 1999 WL 386652 at 2.
[73] *Cruz v. City of Hammond*, No. CIV.A 09-6304, 2015 WL 1467952, at *3 (E.D. La. Mar. 30, 2015).
[74] Rec. Doc. 37.

would not cure the prejudicial effect it would have on Defendants.   A continuance would unnecessarily delay trial which is currently set to take place in three (3) months.  This Court has already recognized that the fourth factor for good cause weighs against plaintiffs because a continuance would unnecessarily delay the trial.[75]

Simply, it is Plaintiffs who have been dilatory.  The Court in S&*W Enterprises*, found that, "[i]n view of district judges' 'power to control their dockets by **refusing to give ineffective litigants a second chance to develop their case**,' we conclude that it was within the judge's sound discretion **not to grant a continuance**."[76]   Likewise, this Court should refuse to give Plaintiffs – what would now be - a third chance to assert a bogus claim.  Plaintiffs' missteps are Plaintiffs' burden to bear and Plaintiffs' burden to bear *alone*.  Defendants will be significantly prejudiced if Plaintiffs' untimely Second Motion to Amend is granted as Defendants will lose federal jurisdiction and will suffer the increased expense of unnecessarily protracted litigation. Defendants have been accused of many misdeeds relative to the accident, which happened because Plaintiffs' father disregarded a stop-sign and pulled directly into Kevin Owen's path. Defendants have the right to expediently clear their names from the derogatory allegations and claims made by Plaintiffs and their lawyers.

II.   **Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint does not comport with the factors set forth in *Hensgens* and so, this court should deny Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint Under 28 U.S.C. §1447(e)**

Plaintiffs' Second Motion to Amend should also be denied per 28 U.S.C. §1447(e).  It is a dilatory tactic, filed solely to defeat federal jurisdiction.

A.  **28 U.S.C. §1447(e) Applies**

---

[75] S&*W Enterprises, L.L.C. v. SouthTrust Bank of Alabama*, NA, 315 F.3d 533, 537 (5th Cir. 2003) ("[t]he fourth factor weighs against S&W because, while a continuance could be granted for additional discovery, the district court found that a continuance would unnecessarily delay the trial.").
[76] *Id.* citing *Reliance Insurance,* 110 F.3d at 258. (*emphasis added*).

Federal Rule of Civil Procedure Rule 15(a) governs the amendment of a pleading prior to trial.[77]   However, when a party seeks to add a non-diverse party in a removed case, the Court's analysis is controlled by 28 U.S.C. § 1447.[78]   Section 1447(e) vests broad discretion in the trial court by expressly providing the following choice: "the court may deny joinder, or permit joinder and remand the action to the State court."[79]   The language of Section 1447(e) is entirely permissive.[80]   The decision to allow an amendment adding non-diverse parties under Section 1447(e) is a discretionary one.[81]   When an amendment would destroy jurisdiction, "most authorities agree that **_leave should be denied_** in the absence of strong equities in favor of amendment."[82]   The district court, should scrutinize that amendment more closely than an ordinary amendment.[83]

The Fifth Circuit has held that when considering an amendment that would destroy the jurisdiction of a court, "justice requires that the district court consider a number of factors to balance the defendant's interest in maintaining the federal forum with the competing interest of not having parallel lawsuits."[84]   Therefore, when determining whether to allow joinder of a party under section 1447(e), a district court examines the factors set out in _Hensgens v. Deere & Co._, and does not apply the "freely given" standard of Rule 15(a).[85]   The _Hensgens_ factors include:

> _(1) the extent to which the purpose of the amendment is to defeat federal jurisdiction;_

---

[77] Fed. R. Civ. P. 15(a).

[78] See also _Hensgens v. Deere & Co._, 833 F.2d 1179, 1180-1181 (5th Cir. 1987).

[79] 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").

[80] _Walker v. Progressive Cty. Mut. Ins. Co._, 304 F.R.D. 486 (E.D. La. 2015).

[81] _Hensgens_, 833 F.2d at 1182. Although _Hensgens_ was decided before 28 U.S.C.§ 1447 was amended to include subsection (e), the Fifth Circuit has cited _Hensgens_ with approval after the passage of § 1447(e). See also _Tillman v. CSX Transportation, Inc._, 929 F.2d 1023 (5th Cir. 1991).

[82] _Neely v. Scottsdale Ins. Co._, 14-0048, 2014 WL 1572441 (E.D. La. Apr. 17, 2014) (citing _Campagna v. Averitt Exp., Inc._, No. 99–1007, 1999 WL 386652, *1, n. 6 (E.D. La. June 10, 1999)).

[83] _Id._

[84] _Hensgens_, 833 F.2d at 1182.

[85] _Neely_, 2014 WL 1572441.

> *(2) whether plaintiff has been dilatory in asking for amendment;*
>
> *(3) whether plaintiff will be significantly injured if amendment is not allowed; and,*
>
> *(4) any other factors bearing on the equities.*[86]

Since the court's decision will determine the continuance of its jurisdiction, the addition of a non-diverse party must not be permitted without consideration of the original defendants' interest in the choice of forum.[87] The court must balance the defendants' interests in maintaining the federal forum with the competing interests of not having parallel lawsuits in deciding whether to permit plaintiffs' amendment.[88]

Applying the *Hensgens* factors to the present case leads to the conclusion that Plaintiffs' Second Motion to Amend should be denied.

### B. Plaintiffs' Second Motion to Amend is Done Solely for the Purpose of Defeating Federal Jurisdiction

It is obvious that Plaintiffs' attempted addition of the DOTD was *done for the sole purpose of defeating federal jurisdiction*.

When analyzing the first *Hensgens* factor, courts have considered whether the party seeking to amend knew or should have known the identity of the non-diverse defendant when the state court complaint was filed.[89] Courts have held that when this occurs, it suggests that the purpose of the amendment is to destroy diversity jurisdiction.[90] Here, Plaintiffs were aware pre-suit of the conditions to the road in which the subject accident took place, but failed to name the DOTD in both their original and first supplemental complaint. This demonstrates that the first

---

[86] *Id.* at 1182. See also *Hensgens*, 833 F.2d 1179 (5th Cir. 1987). See also *Priester v. JP Morgan Chase Bank, N.A.*, 708 F.3d 667, 679 (5th Cir. 2013) (noting that *Hensgens* is the "correct legal standard" to apply in determining whether joinder of nondiverse parties should be permitted after removal).

[87] *Hensgens*, 833 F.2d at 1182.

[88] *Id.* at 1181.

[89] *Tomlinson v. Allstate Indem. Co.*, No. 06–0617, 2006 WL 1331541, at *3 (E.D.La. May 12, 2006).

[90] See, e.g., *Schindler v. Charles Schwab & Co.,* 05-0082, 2005 WL 1155862 (E.D. La. May 12, 2005); *Smith v. White Consol. Indus., Inc.*, 229 F. Supp.2d 1275, 1280 (N.D.Ala.2002); *In re Norplant*, 898 F. Supp. at 431; *O'Connor v. Auto. Ins. Co. of Hartford, Conn.*, 846 F. Supp. 39, 41 (E.D.Tex.1994).

*Hensgens* factor weighs against Plaintiffs Second Motion to Amend.

Plaintiffs claim that they "recently" learned, through, "forensic work being performed by plaintiffs' counsel and experts,"[91] of certain defective conditions to Louisiana State Highway 46 ("LA 46"), including its curvature, sight line, posted speed, and conditions of the roadway.[92] Plaintiffs' assertions are patently false.  Plaintiffs have been aware of LA 46's curvature, sightline, posted speed, and all other road conditions for, at a minimum three (3) months before they even filed their first original complaint in state court.  On August 16, 2018, Plaintiffs were provided with a copy of Defendants' accident reconstruction report that included, among other things, photographs, diagrams, speed limits, road curvatures, and sight lines and distances of the subject accident area.[93]  Specifically,  the report addresses that LA 46 is a "curved" roadway more than once.[94]  The report includes photographs showing the curvature.[95]  It states that LA 46 has a posted speed limit of 45mph.[96]  It shows street view images of both Volpe Drive and LA 46.[97]  It shows images of the posted signage in the area.[98]  It shows images and diagrams of the nearby businesses and parking lots at and near the intersection.[99]  It shows diagrams of the accident scene.[100]  It even includes figures and diagrams of geometric design of highways and streets.[101]  Finally, it specifically addresses the sightline including with respect to the curvature of LA 46.[102]  The report disclosed to Plaintiffs that their father had over 400 feet of unrestricted sightline in which to discern the headlights of Mr. Owen's oncoming tractor-trailer rig, but that

---

[91] Rec. Doc. 61-1.
[92] *Id*. at page 3.
[93] Rec. Doc. 39-1.
[94] *Id*. at pages 4 and 16.
[95] *Id*. at pages 4, 7, 17, 20, 30 - 33, and 45.
[96] *Id*. at page 4.
[97] *Id*. at pages 5, 9, 17, 29 - 31, and 51.
[98] *Id*. at pages 5, 9, 17, 27, 29 - 30, 48 (diagram), and 51.
[99] *Id*. at pages 4, 5, 14 - 15, 17, 20, 27 – 33, 45, and 49.
[100] *Id*. at pages 7, 15, 32 - 33, and 48.
[101] *Id*. at page 42.
[102] *Id*. at page 16.

ample distance did not stop Mr. Carlo Carollo from disobeying his stop-sign.[103]  This report was *absolutely* enough to put Plaintiffs on notice of the road conditions.  The truth is that there is no defect in the road-way – Mr. Carlo Carollo and the Plaintiffs negotiated this intersection accident-free hundreds of times they negotiated it while residing on Volpe Drive for decades.  Plaintiff, Frank Carollo, testified that he has lived approximately a quarter (¼) mile from where the subject accident took place[104], on Volpe Drive for the past nine (9) years.[105]  Frank testified that his parents would travel to Frank's house to bring Frank meals about four (4) times a week.[106]  Carlo Carollo, Jr., testified that the Carollo family has owned nearby Volpe Drive property since 1967 that required traveling to and from LA 46.[107]  Carlo Carollo, Jr., also testified that the roadway was a "very familiar traveled roadway."[108]  Defendants have not claimed in this suit comparative fault on the DOTD.  There is no basis whatsoever for the proposed amendment, other than to deprive Defendants of this proper federal forum.

In *Riggins,* a motion to amend wherein the plaintiff sought to add DOTD after removal, was denied by the court.[109]  The *Riggins* plaintiffs asserted that discovery revealed the DOTD failed to properly design and warn of the hazards associated with an intersection and, therefore, it was necessary to amend their complaint to name the DOTD as a defendant.[110]  The Court held DOTD, as a joint tortfeasor, was not an indispensable party, and therefore the Court was not required to permit joinder pursuant to Rule 19 if doing so would defeat jurisdiction.  Moreover,

---

[103] *Id*. ("Mr. Owens westbound approach on LA 46 to the intersection with Volpe St. involves a gradual right curve that provides for an unrestricted sightline of approximately 400ft.  This assumes that no vehicles are parked along the face of the building located at the north-eat quadrant of the intersection.  However, even with the presence of parked vehicles, had Mr. Carollo pulled forward beyond the stop sign to a point nearer the edge of the roadway but without encroaching onto the favored roadway he would still be afforded an unrestricted sightline of over 400ft and able to discern the headlights of approaching traffic.")
[104] See excerpts from the Deposition of Frank Carollo, attached as Exhibit "B" at page 18.
[105] Exhibit "B" at page 6.
[106] *Id*. at 27-28.
[107] See excerpts from the Deposition of Carlo Carollo, Jr., attached as Exhibit "C" at page 68.
[108] *Id*.
[109] *Riggins v. Anheuser-Busch, Inc.*, CIV. A. 95-3393, 1996 WL 297109 (E.D. La. May 31, 1996).
[110] *Id*.

the court held the facts in the case supported a finding that plaintiffs' attempt to add DOTD was calculated to destroy jurisdiction.[111]  Furthermore, the Fifth Circuit has explained that a "request to join a party against whom recovery is not really possible and whose joinder would destroy subject matter jurisdiction" should not be granted.[112]

Thus, under the first *Hensgens* factor, Plaintiffs should not be allowed to file their Second Motion to Amend.

### C.  Plaintiffs have been dilatory in requesting leave to file their Second Motion to Amend

In analyzing whether a plaintiff has been dilatory in seeking an amendment, district courts often look to the amount of time that has passed between the filing of the original complaint and the amendment.[113]  Here, Plaintiffs did not bring their Second Motion to Amend until nine (9) months after filing their original Petition for Damages and five (5) months after filing their First Supplemental and Amended Complaint.[114]  Courts have found plaintiffs to be dilatory when they waited just two (2) months after filing the original complaint before seeking to amend their complaints, despite being aware of the existence and involvement of the defendants that they sought to join.[115]

In addition to considering the amount of time between the filing of the original complaint and the filing of the amendment, district courts also consider how far the litigation has progressed.[116]  In the instant matter, trial is set for November 2019, only three (3) months from

---

[111] *Id.*

[112] *Cobb v. Delta Export, Inc.*, 186 F.3d 675, 678 (5th Cir. 1999); see also *McDonald v. Union Nat'l Life Ins. Co.*, 307 F.Supp.2d 831, 834 (S.D. Miss. 2004).

[113] *Ellsworth, LeBlanc & Ellsworth, Inc. v. Strategic Outsourcing, Inc.*, 2003 WL 21783304, at *3 (E.D.La. Jul.30, 2003).

[114] See Rec. Doc. 1-1 and Rec. Doc. 15.

[115] *Ellsworth,* 2003 WL 21783304.  See also, *Phillips v. Delta Airlines, Inc.*, 192 F. Supp.2d 727, 729 (E.D.Tex. 2001).

[116] *Vincent v. East Haven Ltd. P'ship*, 2002 WL 31654955, at *3 (E.D.La. Nov.20, 2002); *El Chico Rest., Inc. v. Aetna Cas. and Sur. Co.*, 980 F.Supp. 1474, 1485 (S.D.Ga.1997).

now.  Depositions have been taken, extensive discovery has been conducted, motion practice is in full bloom.

Courts will also consider a plaintiff to be dilatory if the plaintiff knew of the facts that supported its claims against the non-diverse defendant at the time it filed suit in state court.[117] As discussed above, Plaintiffs knew of the DOTD and the facts surrounding the conditions of the road where the subject accident took place well before filing suit.  Plaintiffs' suggestion that they were unaware of their claim against the DOTD is refuted by the facts and their own dispositive testimony.

In *Bordelon*, the Court, in circumstances similar to this case, held that the purpose of the amendment was to defeat jurisdiction and the balance of equities favored denying plaintiffs' motion for leave to amend to add the State of Louisiana as a defendant in a personal injury action.[118]  In *Bordelon*, the original petition filed in state court made no allegations that would implicate the State of Louisiana.  Moreover, although the action was pending in state court for nearly ten (10) months, the plaintiffs took no action to add additional defendants.[119]  These facts led the Court to believe the amendment was more likely solely to defeat federal court jurisdiction.  On the issue of delay, the Court found the plaintiffs' motion was dilatory because leave was not sought until nearly a year after the filing of the suit in state court.[120]  The Court denied plaintiffs' motion to amend.[121]  The Court here should do the same.  The timing of Plaintiffs' request is suspect.  It comes on the heals of a defeat on a discovery motion and the addition of yet another lawyer to the Plaintiffs' team of lawyers – clearly a strategic result and

---

[117] See *Connoisseur Doors, Inc. v. Haney Corp.*, No. CIV.A. SA 96-CA-146, 1996 WL 156557, at *3-4 (W.D. Tex. Apr. 1, 1996).
[118] *Bordelon v. Liberty Mut. Fire Ins. Co.*, 02-2608, (E.D. La. Oct. 7, 2002), 2002 WL 31246553 (citing *Hensgens*, supra.)
[119] *Id.*
[120] *Id.*
[121] *Id.*

nothing more.

Furthermore, Plaintiffs materially misrepresent to this Court that Defendants have been dilatory in providing discovery to Plaintiffs.  Defendants have been more than forthcoming in providing Plaintiffs with discovery.  In fact, Defendants even provided Plaintiffs with a copy of their accident reconstruction report before suit was even filed.   Plaintiffs, on the other hand, had made no attempt to even schedule a deposition until May 2019.[122]

Plaintiffs' Second Motion to Amend is nothing more than a dilatory attempt to strip Defendants of their compelling interest in retaining the federal forum and this Court of its diversity jurisdiction.  Such efforts are not authorized by either 28 U.S.C. §1367(b) or the court's discretionary review under 28 U.S.C. §1447(e), and hence, the Motion to Amend must be denied.

**D.  <u>Denial of the Amendment will Not Significantly Injure Plaintiffs</u>**

The third *Hensgens* factor also weighs in favor of denying Plaintiffs' untimely Second Motion to Amend.

In considering the third *Hensgens* factor, courts have considered whether a plaintiff can be afforded complete relief without the amendment.[123]  Here,  Plaintiffs will not be injured if their Second Motion to Amend is denied inasmuch as Plaintiffs are fully entitled to pursue their purported claim against the DOTD in state court.[124]  Plaintiffs have effectively interrupted the (1) one year prescriptive period for tort actions as against all joint tortfeasors pursuant to Louisiana Civil Code Art. 2324(C) which states that "interruption of prescription against one joint tortfeasor is effective against all joint tortfeasors."[125]  As such, Plaintiffs are free, should they so

---

[122] See fn. 27 and 28.
[123] *Jerido v. Am. Gen. Life and Acc. Ins. Co.*, 127 F.Supp.2d 1322, 1325 (M.D. Ala. 2001). See also, *Walker v. Progressive Cty. Mut. Ins. Co.*, 304 F.R.D. 486 (E.D. La. 2015).
[124] See *Ascension Enterp.*, 969 F. Supp. at 361 (observing that the plaintiffs' ability to pursue claims in state court means there is no prejudice).
[125] La. C.C. Art. 2324(C).

choose, to pursue the DOTD in state court.

Additionally, the Supreme Court has stated that Federal Rule of Civil Procedure Rule 19 does not require joinder of joint tortfeasors because they are not indispensable parties. The Advisory Committee Notes to Rule 19(A) explicitly state that "a tortfeasor with the usual joint-and-several liability is merely a permissive party to an action against another with like liability."[126] There is nothing in Louisiana tort law to the contrary.[127] In *Riggins*, the Court held that the DOTD, as a joint tortfeasor, was not an indispensable party, and therefore the Court was not required to permit joinder pursuant to Rule 19 if doing so would defeat jurisdiction.[128] In *Walker*, this Court has found plaintiffs' "empty chair" argument to be "unpersuasive" in light of the fact that the party they sought to add, the DOTD, was not an indispensable party.[129] Similarly, in this matter, the DOTD, as a joint tortfeasor, is not an indispensable party, and so this Court should, as it had done in *Walker*, find Plaintiffs' "empty chair" argument, unpersuasive. Defendants suggest it is highly unlikely that Plaintiffs truly wish to pursue the DOTD. The Defendants have not alleged any fault on the DOTD – thus there is no "empty chair" argument that would even serve as a basis for the request. This is Plaintiffs ploy to erase federal jurisdiction and have the case remanded to St. Bernard Parish, where the Torres family arguably has been the most politically influential family for decades.

**E.  <u>All Other Factors Bearing on the Equities Conclude that Plaintiffs' Second Motion to Amend Should be Denied</u>**

The fourth and final *Hensgens* factor also requires a denial of Plaintiffs Motion for Leave. The fourth *Hensgens* factor requires that the Court address any other factors bearing on

---

[126] *Temple v. Synthes Corporation*, Ltd., 498 U.S. 5, 7 (1990).
[127] See *Nottingham v. General American Communications Corp.*, 811 F.2d 873, 880 (5th Cir.) ("[I]t is well established that Rule 19 does not require the joinder of joint tortfeasors.") cert. denied,484 U.S. 854 (1987). See also *Walker v. Progressive Cty. Mut. Ins. Co.*, 304 F.R.D. 486 (E.D. La. 2015).
[128] *Id.* (citing *Riggins v. Anheuser-Busch, Inc.*, No. 95-3393, 1996 WL 297109 (E.D. La. May 31, 1996)).
[129] *Walker v. Progressive Cty. Mut. Ins. Co.*, 304 F.R.D. 486 (E.D. La. 2015).

the equities. Courts have noted that the defendant "has a compelling interest in maintaining the federal forum. The rationale behind removal statutes is that diverse defendants have an option of selecting a state or federal forum."[130]  However, there is "also the danger of parallel federal/state proceedings with the inherent dangers of inconsistent results and the waste of judicial resources."[131]

As the Fifth Circuit stated in *Hensgens*, supra, the defendant's interest in remaining in the federal forum is significant and is to be properly considered in determining the propriety of a motion to amend.[132]  As non-diverse Defendants, Langer, Owens, and Chubb all have a compelling interest in and a right to a federal forum.  "[T]here has been some provision for the removal of cases from state to federal courts ever since the original Judiciary Act of 1789."[133] The underlying purpose of removal jurisdiction is "to protect nonresident defendants from the local prejudices of state courts."[134]  Courts have recognized the defendant's compelling interest in maintaining the federal forum.[135]  In addition to the right to remove to a federally provided disinterested forum, defendants have substantial interest in the lower costs and faster resolution that will oftentimes result in litigating matters in federal court over state court.   Here, a trial is already set to take place on November 18, 2019 whereas, if remanded back to St. Bernard Parish where the Torres family holds substantial influence, trial will be years away.   There are clear advantages to all parties for the prompt and less costly resolution of this suit in this Court.

---

[130] *Campagna v. Averitt Exp., Inc.*, 99-1007, 1999 WL 386652 at *2 (E.D. La. June 10, 1999).

[131] *Hensgens*, 833 F.2d. at 1182. See also *Fontenot v. Johnson & Johnson*, 10-162, 2012 WL 2064722 (W.D. La. Apr. 13, 2012) report and recommendation adopted, 10-00162, 2012 WL 2064848 (W.D. La. June 5, 2012) appeal dismissed, 718 F.3d 518 (5th Cir. 2013). See also *Tomlinson v. Allstate Indem. Co*., No. Civ. A. 06–0617, 2006 WL 1331541, at *6 (E.D.La. May 12, 2006).

[132] *Hensgens*, 833 F.2d at 1182. See also *Campagna*, supra, 1999 WL 386652, - 2 ("[a]n amendment and subsequent remand to state court would be prejudicial" where case properly pending under the court's diversity jurisdiction, and the non-diverse defendant sought to be added was not indispensable).

[133] See 14B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d §3721, p. 288 (West, 1997).

[134] *Id*. at 289.

[135] *Tomlinson*, 2006 U.S. Dist. LEXIS 29394 at *16; *Campagna,* LEXIS 8981 (E.D. La. June 9, 1999).

Plaintiffs claim that if their untimely Second Motion to Amend is denied, they will potentially face inconsistent results, however, parallel litigation in and of itself does not require remand or abstention of the federal claims.[136]   For example, in *Signad*, the Fifth Circuit found that "[w]hen parallel state and federal litigation exists, the federal court's balance [is] heavily weighted in favor of the exercise of jurisdiction," and "a federal court generally may not decline to exercise its jurisdiction because of parallel state litigation, exceptional circumstances may exist to warrant abstention."[137]   In fact, in *Campagna*, the Court held that it was not prejudicial to require plaintiffs to proceed in separate proceedings where Article 2323 allowed for all potentially liable persons' fault to be considered.[138]   Specifically, the Court found that, because Louisiana law provides that the degree or percentage of fault of all persons causing or contributing to the plaintiff's injury must be determined at trial regardless of whether the person is a party or non-party to the action, a judgment rendered without the DOTD as a defendant would not be prejudicial to Plaintiffs.[139]

## CONCLUSION

Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint should be denied as it was brought five (5) months after the Court's deadline without good cause. While there is certainly no good cause for their extremely dilatory Second Motion to Amend, even if this Second Motion to Amend was considered on its face, it should be denied as it is brought for the sole purpose of defeating this Court's jurisdiction.  Thus, for the reasons above, Defendants, Kevin Owens, Langer Transport Corporation, and ACE American Insurance Company ("Chubb"), pray that this Court enter an order denying Plaintiffs' Motion for Leave to

---

[136] *Walker v. Progressive Cty. Mut. Ins. Co.*, 304 F.R.D. 486 (E.D. La. 2015).
[137] *Signad, Inc. v. City of Sugar Land*, 753 F.2d 1338, 1339 (5th Cir. 1985).
[138] *Campagna*, No. 99-1007, 1999 WL 386652 (E.D. La. June 10, 1999).
[139] *Id*.

File Second Supplemental and Amended Complaint.

Respectfully submitted,


/s/ Kelsey L. Zeitzer
Stanton E. Shuler, Jr. - #19152 (T.A.)
Louis P. Bonnaffons - #21488
Leola M. Anderson - #30377
Kelsey L. Zeitzer - #37368
Robert L. Bonnaffons - #18564
Leake & Andersson, L.L.P.
1100 Poydras Street, Suite 1700
New Orleans, LA  70163-1701
sshuler@leakeandersson.com
lbonnaffons@leakeandersson.com
landerson@leakeandersson.com
kzeitzer@leakeandersson.com
rbonnaffons@leakeandersson.com
Tel:  504/585-7500
Fax:  504/585-7775
*Attorneys for Defendants Langer Transport Corporation, Ace American Insurance Company, n/k/a Chubb, and Kevin Owens*


## CERTIFICATE OF SERVICE

I hereby certify that the foregoing pleading has been electronically filed this date and delivered to all counsel of record by notice of electronic filing by the court, by depositing a copy of same in the United States mail, first class postage prepaid, by hand delivery or by facsimile transmission, this 5th day of August, 2019, at their last known address of record.


/s/ Kelsey L. Zeitzer