# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| CARLO CAROLLO, JR., ET AL. | CIVIL ACTION |
| VERSUS | NO: 18-13330 |
| ACE AMERICAN INSURANCE COMPANY, ET AL. | SECTION: "D" (4) |

## ORDER

Before the Court is **Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint (R. Doc. 61)** filed by Plaintiffs Carlo Carollo, Jr., and Frank Carollo, individually and on behalf of the Estate of Carlo Carollo Sr., and the Estate of Angelina Carollo, seeking an Order from this Court granting them leave to file a Second Supplemental and Amended Complaint. This motion is opposed. R. Doc. 66. The motion was set for submission on August 14, 2019, and was heard on the briefs.

### I. Background

This action was initially filed in the 34th Judicial District Court for the Parish of St. Bernard on November 7, 2018, as a personal injury action in negligence under the theories of both individual and respondeat superior liability. R. Doc. 1-1. On December 11, 2018, the case was removed to the U.S. District Court for the Eastern District of Louisiana invoking the Court's diversity jurisdiction. R. Doc. 1.

Plaintiffs Carlo Carollo, Jr. and Frank Carollo, children of the deceased Carlo Carollo Sr., and Angelina Carollo, allege that on or about November 9, 2017, at approximately 6:33 p.m., as Carlo Carollo Sr., attempted to make a lawful left turn onto Louisiana Highway 46 ("LA 46") from Volpe Drive his vehicle was struck by Defendant Kevin Owens ("Driver Owens"), operator of a 2013 Freightliner Cascadia traveling westbound on LA 46. R. Doc. 1-1, p. 2-3. Plaintiffs Carlo Carollo Sr. and Angelina Carollo suffered fatal injuries as a result of this accident. *Id.*

Plaintiffs and the decedents were familiar with the intersection and general locale as they, and their parents, lived on Volpe Drive for decades and Frank Carollo continues to live on the Volpe Drive. R. Doc. 66, p. 6. Defendants maintain the accident was caused due to the sole fault of passenger vehicle driver Plaintiff Carlo Carollo Sr., who failed to stop at a traffic stop sign before turning onto the highway. *See, e.g.*, R. Doc. 39, p. 14. Plaintiffs refute this claim and maintain Driver Owens had the last clear chance to avoid the collision. *See* R. Doc. 61-1, p. 2. Liability remains disputed.

One year to the day of the accident, Plaintiffs filed the suit in Louisiana State Court in St. Bernard Parish. After the case was removed, a scheduling conference took place on January 31, 2019, that imposed an amended pleading deadline of March 4, 2019. R. Doc. 11. On March 4, 2019, Plaintiffs filed their First Supplemental and Amended Petition. R. Doc. 15. On June 25, 2019, Plaintiffs also filed the subject motion seeking leave to add the State of Louisiana Department of Transportation and Development ("DOTD") as a party defendant in their Second Supplemental and Amended Petition, which the Court notes, coincidentally happened the same day Plaintiffs moved to enroll additional counsel of record Lawrence Blake Jones and Joshua L. Rubenstein. R. Docs. 60 & 61.

As to the instant motion, Plaintiffs aver that, despite the fact that discovery has been ongoing for over eight (8) months in this case, their efforts to proceed diligently with discovery in this matter were hampered due to unforeseen events such as an injury to their counsel, Roberta Burns, who suffered a hip and shoulder fracture on January 19, 2019. R. Doc. 61-1, p. 2. Plaintiffs contend that her medical condition required surgery and months of recuperation and physical therapy. *Id.* They, however, do not indicate how much time Burns' recovery actually took. Plaintiffs further contend that it was only later when discovery resumed, that their forensic experts

uncovered information suggesting that the DOTD may bear some liability in connection with the subject accident, namely: 1) the curvature in the sightline and stopping sight distance were inadequate for the posted speed, 2) the sightline for entry of vehicle on to highway LA 46 was inadequate, 3) the posted speed was excessive, 4) the signage posted along LA 46 westbound was inadequate, and 5) the DOTD allowed a sightline obstruction in allowing the construction of a private parking close to the shoulder and entrance of the highway. R. Doc. 61-1, p. 2-3. As such, Plaintiffs submit that they should be allowed to add DOTD as a party defendant. R. Doc. 61-1, p. 2.

Defendants Kevin Owens, Langer Transport Corporation, and ACE American Insurance Company contend that the proposed amendment is a fraudulent attempt by Plaintiffs to destroy this Court's diversity jurisdiction because 1) Burns, although injured two weeks earlier, participated in the telephonic scheduling conference; 2) the police investigation and report indicated driver error, and not dangerous or unreasonably unsafe road conditions, caused the accident; and 3) two months before Plaintiffs filed the instant lawsuit, Defendants provided to the Plaintiffs their accident reconstruction report which contained, among other things, the posted speed limits (mph), the road curvature, sightlines, diagrams, and the tractor trailer truck's hard braking events (*See* R. Doc. 39-1). R. Doc. 66.

Defendants further contend that Plaintiffs have had more than ample time to investigate, assess facts, and raise claims against the DOTD where more than twenty-two (22) months have elapsed since the accident occurred and one year has since passed from when Defendants produced to Plaintiffs a copy of their expert's accident reconstruction report. R. Doc. 66, p. 6. The Defendants also contend that the motion should be denied because Plaintiffs failed to address the good cause requirement of Federal Rule of Civil Procedure 16(b). R. Doc. 66, p. 8. Specifically,

Defendants state the Court should not find good cause and the motion should be denied because there are four (4) additional lawyers enrolled in the case who could have developed their theory while Ms. Burns recuperated. Additionally, the Defendants contend the motion should be denied because 1) Plaintiffs failed to provide a valid explanation for the importance of the amendment, 2) Defendants would be prejudiced, and 3) the proposed amendment does not comport with the factors set forth in *Hensgens v. Deere & Co.*, 833 F.2d 1179, 1182 (5th Cir. 1987).

## II.     **Standard of Review**

Generally, Federal Rule of Civil Procedure ("Rule") 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* "Such leave is not automatic, however, and is at the discretion of the district court." *Muttathottil v. Mansfield,* 381 Fed.Appx. 454, 457 (5th Cir. 2010).

"[T]he Fifth Circuit [has] clarified that when, as here, a scheduling order has been issued by the district court, Rule 16(b) governs amendment of pleadings." *Royal Ins. Co. of America v. Schubert Marine Sales*, 02–0916, 2003 WL 21664701, at *2 (E.D. La. July 11, 2003 (citing *S & W Enterprises, L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535–36 (5th Cir. 2003)). Rule 16(b) limits changes in the deadlines set by a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To determine if good cause exists as to untimely motions to amend pleadings, the Court should consider: "(1) the movant's explanation for its failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure that

prejudice." *Schubert Marine Sales*, 2003 WL 21664701, at *2 (citing *S & W Enterprises*, 315 F.3d at 536).

"If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the state court." 28 U.S.C. § 1447(e). *Moore v. Manns*, 732 F.3d 454, 456 (5th Cir. 2013). When considering an amendment which would destroy the court's diversity jurisdiction, "*Hensgens* sets forth a four-factor test for determining whether the addition of a non-diverse defendant requiring remand should be granted, or whether the amendment seeking to add the non-diverse defendant should be denied, allowing the federal court to retain jurisdiction*.*" *Karr v. Brice Bldg. Co.*, No. CIV. A. 08-1984, 2009 WL 1458043, at *2 (E.D. La. May 22, 2009) (citing *Hensgens*, 833 F.2d at 1182); *see also*, *Doleac ex rel. Doleac v. Michalson*, 264 F.3d 470, 474 (5th Cir. 2001) ("The *Hensgens* factors guide the court in whether to allow an amendment to add a "nondiverse nonindispensable party.").

*Hensgens* commands the Court "should scrutinize an amended pleading naming a new nondiverse defendant in a removed case 'more closely than an ordinary amendment.'" *Moore*, 732 F.3d at 456 (citing *Hensgens*, 833 F.2d at 1182). Specifically, "[t]he court should consider the extent to which the purpose of the amendment is to defeat federal jurisdiction, whether plaintiff has been dilatory in asking for amendment, whether plaintiff will be significantly injured if amendment is not allowed, and any other factors bearing on the equities. The district court, with input from the defendant, should then balance the equities and decide whether amendment should be permitted." *Hensgens*, 833 F.2d at 1182. "Because the court's decision will determine the continuance of its jurisdiction, the addition of a nondiverse party must not be permitted without consideration of the original defendant's interest in the choice of forum." *Id.*

### III. Analysis

#### A. Rule 16(b) Good Cause

Because a Scheduling Order (R. Doc. 11) has been instituted in this case, Federal Rule of Civil Procedure 16(b) governs the amendment of pleadings. As an initial note, the Court cannot accept as "good cause" for the delay Plaintiffs' counsel Roberta Burns' January shoulder and hip injuries. While the Court notes that Burns does not apparently seem to participate in this case between the January 31, 2019 Scheduling Conference (R. Doc. 11) and Plaintiffs' April 30, 2019 Response Memorandum in Opposition to Langer Transportation Corporation's Motion for Partial Summary Judgement (R. Doc. 22), between those points Plaintiffs filed three (3) additional record documents including their First Supplemental and Amended Complaint on February 28, 2019. *See* Ex Parte/ Consent Motion for Leave to File First Supplemental and Amended Complaint (R. Doc. 12), Ex Parte/ Consent Motion for Leave to File First Supplemental and Amended Complaint (R. Doc. 13), and Status Report by All Plaintiffs (R. Doc. 16). The Court further notes that Plaintiffs currently have six (6) enrolled counsels of record, of whom, at least two, to the Court's knowledge, participated in the case in Ms. Burns' absence. This explanation, therefore, falls flat.

The Court next notes the fact that this is not Plaintiffs' First Proposed Supplemental and Amended Petition for Damages but their Second Proposed Supplemental and Amended Petition for Damages. Adding an additional Defendant and alleging a different theory so close to the brink of trial would cause Defendants severe prejudice, without even including into the consideration the fact that allowing this amendment would divest the Court of its jurisdiction. Moreover, considering the fact that District Judge Wendy B. Vitter recently denied Plaintiffs' Motion for Continuance of the November 18, 2019 trial date (R. Doc. 85, p. 11), the Court doubts the availability of a continuance to cure such prejudice.

**B. Hensgens Four-Factor Analysis**

Separate and distinct of good cause, as Plaintiffs seek leave to file a second supplemental and amended complaint that adds an additional party defendant—the State of Louisiana Department of Transportation and Development ("DOTD")—the Court considers the proposed amendment in light of the four *Hensgens* factors. As previously noted, Defendants removed this action to the United States District Court for the Eastern District of Louisiana on December 11, 2018, on the basis of the Court's diversity of citizenship subject matter jurisdiction. R. Doc. 1. As adding DOTD would defeat this Court's diversity subject matter jurisdiction, the Court applies the four (4) factor test set forth in *Hensgens*.

*i.    First* Hensgens *Factor*

In consideration of *Hensgens* first factor, the extent to which the purpose of the amendment is to defeat federal jurisdiction, this Court first notes that amending the pleading to join the DOTD would both result in a loss of subject matter jurisdiction as a matter of destroying the Court's diversity jurisdiction, as well as possibly implicating the State of Louisiana's, through the DOTD, Eleventh Amendment protection, which bars suit against a state defendant in federal court. *See, e.g.*, *Brown v. Foti*, No. CIV. A. 94-1659, 1996 WL 271639, at *3 (E.D. La. May 21, 1996) and *Lafourche Par. Water Dist. No. 1 v. Traylor Bros.*, No. CIVA. 09-3204, 2009 WL 2175983, at *2 (E.D. La. July 21, 2009) ("The . . . DOTD is an arm of the State of Louisiana.").

While the Plaintiffs aver that there is "no" temporal proximity between removal and Plaintiffs' motion for amendment, the Court, nonetheless, takes note of the temporal proximity between Plaintiffs' first adverse ruling on July 24, 2019, and Plaintiffs' motion for amendment on July 25, 2019. R. Doc. 67-1, p. 5. *See also* R. Doc. 72 and R. Doc. 61. *See, e.g., AMX Envtl. Evolution, Ltd. v. Carroll Fulmer Logistics Corp.*, No. CIV A 3:08-CV-0908-G, 2009 WL 972994,

at *3 (N.D. Tex. Apr. 9, 2009) ("sudden efforts to join a non-diverse party after a case has been properly removed weigh against allowing the joinder."). The timing of the proposed amendment is, in it of itself, suggestive of the fraudulent nature of the proposed joinder.

In considering the first *Hensgens* factor, the Court will also ask "whether the plaintiff[s] knew or should have known the identity of the non-diverse defendant when the state court complaint was filed." *Wells*, 171 F. Supp. 3d at 505. In answering this question, the Court initially notes that before this second proposed amendment, Plaintiffs have never voiced a scintilla of fault against the DOTD. While Plaintiffs, retained their expert, Mr. Jeremy Hoffpauir, on November 30, 2018, to perform a crash data recorder download, it was not until April 22, 2019, nearly two months after the March 4, 2019 pleading amendment deadline, that Plaintiffs inquired as to his availability in performing accident reconstruction analysis. Defendants propounded their accident reconstructionist's report ***pre-suit*** on August 16, 2018, which included analysis of, among other things, a CAD land site survey, sightlines, as well as photographic and aerial footage of the accident scene. *See* R. Doc. 39-1. The Court is of the opinion that this is the point at which Plaintiffs knew or should have known the identity of DOTD, the proposed non-diverse defendant. Yet, when the state court complaint was filed nearly three months later on November 7, 2018, Plaintiffs did not indicate any liability by DOTD.

Moreover, Plaintiffs make no indication in the instant motion as to when exactly they learned of DOTD's alleged involvement other than to say that it was "the confluence of the referenced data." R. Doc. 67-1, p. 5. This presents two problems: 1) "the confluence of referenced data" suggest that Plaintiffs were potentially aware of DOTD to some extent; and 2) Plaintiffs have not indicated what information they have obtained demonstrating that DOTD is only now a viable defendant. The Court is convinced that enough facts and information existed that Plaintiffs

possibly should have known of DOTD's potential involvement through exercise of due diligence where Plaintiffs were in possession of Defendants' expert report, which data would have suggested potential liability, if any, on the part of DOTD, prior to their filing the suit in state court. As such, the Court remains skeptical of Plaintiffs' request.

Case law is, however, clear when considering the *Hensgens* first factor, the Court should factor most greatly whether the proposed amendment states a valid claim. *Wells v. Medtronic, Inc.*, 171 F. Supp. 3d 493, 505 (E.D. La. 2016). Under Louisiana law, in order to find the State of Louisiana Department of Transportation and Development liable for dangerous or unreasonably dangerous road conditions, "Plaintiff[s] must prove: (1) DOTD had custody of the thing that caused the plaintiffs['] injuries or damages; (2) the thing was defective because it had a condition that created an unreasonable risk of harm; (3) DOTD had actual or constructive knowledge of the defect and failed to take corrective measures within a reasonable time; and (4) the defect in the thing was a cause-in-fact of the plaintiffs['] injuries." *Britt v. Spirit Commercial RR Grp. Inc.*, No. CV 17-424-JWD-RLB, 2018 WL 2275556, at *5 (M.D. La. May 2, 2018), report and recommendation adopted, No. CV 17-424-JWD-RLB, 2018 WL 2269905 (M.D. La. May 17, 2018) (citing *Netecke v. State ex rel. DOTD*, 747 So. 2d 489, 494 (La. 1999)).

Despite the fact that Defendants proffer evidence to suggest Plaintiffs' claims are subjectively weak or perhaps not as precise as possible in attempt to rebuff the validity of Plaintiffs' claims (*See* R. Doc. 90-1), the Court finds the allegations, on their face, are enough to state a valid claim against the DOTD under Louisiana law in connection to the instant vehicular accident. Still, the Court ultimately finds the first *Hensgens* factor weighs slightly against granting the amendment given that the Court is highly suspicious of the circumstances surrounding the amendment. *Schindler v. Charles Schwab & Co.*, No. CIV.A.05-0082, 2005 WL 1155862, at *4

(E.D. La. May 12, 2005) (finding the first factor weighed slightly against granting amendment where the Court opined Plaintiff's motivation was likely to defeat jurisdiction although plaintiff may have stated a valid claim). "However, the fact that one factor might weigh in favor of denying the amendment is not dispositive of this Court's inquiry because the remaining factors weigh in favor of permitting the amendment." *Id.*

    *ii.*    *Second* Hensgens *Factor*

Next, in consideration of *Hensgens* second factor, whether plaintiff has been dilatory in asking for amendment, the Court takes especial note that this motion for amendment comes to the Court beyond the deadline imposed in the Scheduling Order (R. Doc. 11). In fact, that March 4, 2019, pleading amendment deadline imposed lapsed without extension. R. Doc. 11, p. 2. While Plaintiffs maintain there is "good cause" for the delay where the Defendants withheld certain requested discovery, the Court finds this suggestion lacks merit where it comes more than four (4) months past the Court imposed pleading amendment deadline. Plaintiffs do not point to a single piece of evidence Defendants ultimately produced to them on its motion to compel—all requests directed at Driver Owens and his truck, and not regarding the DOTD, the road, or the accident reconstruction report's road and terrain section—from which the Court can considered newly discovered information requisite to allow this joinder. *See* R. Doc. 72.

While the portion of LA 46 may have been defective or unreasonably dangerous both as constructed and maintained by the DOTD, the sightlines, the posted speed limit, the postage, and the existence of a parking lot in proximity to the highway—the allegations raised in Plaintiffs' proposed Second Supplemental and Amended Complaint—are all facts known to Plaintiffs since the date of the accident and at minimum two (2) months before they filed suit. R. Doc. 61-2.

As just a single example, Plaintiffs submit to the Court that is was not until June 25, 2019, at the deposition of the investigating state trooper that defendants finally provided Plaintiffs photographs of the accident scene. R. Doc. 67-1, p. 2. To the contrary, the record indicates Defendants' expert's accident reconstruction report propounded pre-suit on August 16, 2018, contains, among other information and data, Defendants' accident scene photographs. *See* R. Doc. 39-1. Plaintiffs further acknowledge their receipt of this report. R. Doc. 67-1, p.2., n.7. So, while Defendants' expert pre-suit report does not conclusively establish the opinions therein, the fact that Defendants gave the Plaintiffs this report, more than eleven (11) months prior to Plaintiffs' proposed amendment, does bear on the dilatory nature of Plaintiffs' exercise of its obligation to investigate the facts and assess the potential liability in connection with their claims. *Id.* Defendants, in providing their expert's reconstructionist report, should have served as a trigger for Plaintiffs to hire their own expert reconstructionist to both refute Defendants' expert report and aid in Plaintiffs' development of theories of relief. Plaintiffs, at that point, if not the moment of the accident, had notice that sightlines and/or other road obstructions, were a potential theory that it could pursue. The mere fact that Plaintiffs, strategically or otherwise, opted to not consult an expert at this trigger is indicative of the dilatory nature of this request. As such, the Court finds the Plaintiff has been dilatory in seeking this amendment and weighs the second *Hensgens* factor against allowing the proposed Second Supplemental and Amended Complaint.

    iii.    *Third* Hensgens *Factor*

Next, in consideration of the third *Hensgens* factor, whether plaintiff will be significantly injured if the amendment is not allowed, Plaintiffs submit to the Court the high potential for piecemeal litigation. Nonetheless, while the rule states "significant injury," the general approach in the Eastern District has been focused mostly on inefficiency, waste of judicial resources, danger

of inconsistent results, and cost to Plaintiffs that results from forcing the Plaintiffs to bring a separate suit on a valid claim. *Herzog v. Johns Manville Prod. Corp.*, No. CIV.A. 02-1110, 2002 WL 31556352, at *2 (E.D. La. Nov. 15, 2002) ("the third *Hensgens* factor favors the Plaintiff because forcing the Plaintiff to file a separate suit on the same facts is inefficient and a waste of judicial resources."). Given this emphasis, the Court feels that it must recognize these concerns. By forcing the Plaintiffs to file an action in state court against DOTD, Plaintiffs may incur costs of litigating proceedings in both state and federal court on a similar legal issue. Nonetheless, and despite Plaintiffs' assertions of undue expense, the Court does not find these costs to necessarily be dispositive of the issue of even necessarily significant.

Courts have recognized that "[a]nother consideration bearing on this factor is whether [] plaintiff[s] can be afforded complete relief without the amendment." *Schindler*, 2005 WL 1155862, at *4 (citing *Jerido v. Am. Gen. Life and Acc. Ins. Co.*, 127 F.Supp.2d 1322, 1325 (M.D. Ala. 2001)). Plaintiffs implicitly acknowledge that they are free to seek relief against the DOTD by avenues, other than this proposed second amended complaint should they so choose. *See, e.g.*, R. Doc. 61-1, p. 6.

Furthermore, as Defendants have pointed out, in *Riggins*, this Court held that "[i]t is apparent from plaintiff's supporting memorandum that the DOTD is an alleged joint tortfeasor [and] Rule 19 does not require joinder of joint tortfeasors because they are not indispensable parties." *Riggins v. Anheuser-Busch, Inc.*, No. CIV. A. 95-3393, 1996 WL 297109, at *2 (E.D. La. May 31, 1996). As a joint tortfeasor, all Defendants jointly and severally liable for the damages, meaning "each liable party is individually responsible for the entire obligation, but a paying party may have a right of contribution or indemnity from nonpaying parties." BLACK'S LAW DICTIONARY (11th ed. 2019). Because of this, the Court finds merit to Defendants' argument that the Plaintiffs

can be afforded "complete relief" should their claim be successful; thus, the Court finds that there would be no "significant injury" in denying the amendment and weighs the third *Hensgens* factor against allowing the proposed amendment.

    *iv.*    *Fourth* Hensgens *Factor*

Finally, in consideration of the fourth *Hensgens* factor, whether there are any other factors bearing on the equities, the Court notes the Plaintiffs' lack of evidentiary support proffered to the Court in support of their proposed amendment. As Defendants note, not only was the State Police's accident report completed and available to Plaintiffs on February 1, 2018, but on August 16, 2018, pre-suit, counsel for Defendants' provided Plaintiffs with a copy of Defendants' accident reconstruction report. R. Doc. 66, p. 2-3. *See also*, R. Doc. 39-1. Plaintiffs utterly fail to explain why, especially in light of Defendants' expert report, that Plaintiff failed to timely hire their own expert reconstructionist. Plaintiffs also fail to explain what exact data makes their expert report distinct from Defendants' expert report—propounded pre-suit—that offers any sort of reason, let alone good cause, in their choosing not to pursue this theory of liability until the last moments. In fact, Plaintiffs did not provide the Court the accident reconstructionist's qualification or information and data that would indicate liability by the DOTD.

While the Court may accept the confluence of referenced data justifies amendment, here Plaintiffs simply provide no data to reference. *Whitaker v. Gen. Motors Corp.*, No. CV 16-3421, 2017 WL 1346271 (E.D. La. Apr. 12, 2017), *aff'd*, No. CV 16-3421, 2017 WL 2424717 (E.D. La. June 2, 2017). Moreover, the Court is highly suspect that Plaintiffs waited to hire an expert reconstructionist after nearly two (2) years has elapsed since the accident, at which point the accident scene transmuted and the evidence dissipated. The Court also hesitates to find this amendment equitable as Plaintiffs were in possession of all the information to support this

13

supposed new theory when they filed their original complaint, as well as their First Supplemental and Amended Petition for Damages. The Court finds this bears negatively on the equities in allowing the proposed pleading.

Still, as this Court has previously explained, "[w]hen determining 'other factors,' the Court typically balances the competing interests of the parties. Courts have noted that the defendant 'has a compelling interest in maintaining the federal forum. The rationale behind removal statutes is that diverse defendants have an option of selecting a state or federal forum.'" *Neely v. Scottsdale Ins. Co.*, No. CIV.A. 14-0048, 2014 WL 1572441, at *8 (E.D. La. Apr. 17, 2014). Here, Defendants assert their "compelling interest" in choosing the federal forum. R. Doc. 66, p. 23. While the Court notes that this is not enough to keep the Defendants in the federal forum, *see Lafourche Par. Water Dist. No. 1*, 2009 WL 2175983, at *5, the Court finds with relation to the first and third *Hensgens* factors—that the Plaintiffs likely have an improper motive to the amendment and that there is no significant injury to the Plaintiff in denying the amendment— bolstered weight of the Defendants' interest in the federal forum. *Legeaux v. Borg-Warner Corp.*, No. CV 16-13773, 2016 WL 6069770, at *5 (E.D. La. Oct. 17, 2016). As such, the Court finds the fourth *Hensgens* factor weighs against allowing Plaintiffs' second proposed amendment complaint, and the overall balance of the Hensgens factors weighs in favor of denying the amendment.

Although, Plaintiffs did not analyze Rule 16(b) and the four *Hensgens* factors distinct of each other, Plaintiffs do cite to *Karr v. Brice Bldg. Co.*, 2009 WL 1458043, at *2 (granting motion to remand where motion for leave to amend was granted as <u>unopposed</u>) and *Bethay v. Ford Motor Co.*, No. CIV. A. 99-0367, 1999 WL 496488, at *3 (E.D. La. July 13, 1999) (finding the Magistrate Judge's evaluation of the second *Hensgens* factor not clearly erroneous where Plaintiff filed his

motion to supplement and amend <u>before</u> the Court imposed deadline), in support of their motion. Nonetheless, these cases are distinguishable from the case currently before the Court that is both <u>opposed</u> and <u>after</u> the Court imposed deadline.

As the Court finds all four of the *Hensgens* factors weigh against allowing the proposed amendment, the motion for leave to file is, therefore, denied.

## IV. <u>Conclusion</u>

Accordingly,

**IT IS ORDERED** that the **Plaintiffs' Motion for Leave to File Second Supplemental and Amended Complaint (R. Doc. 61)** is **DENIED.**

New Orleans, Louisiana, this 18<u>th</u> day of October 2019.

**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**